## WELKER vs. WALLACE.

When money, belonging to plaintiff, in the hands of one partner of a firm, by whom it was collected for the plaintiff, is used by such partner in the business of the firm, the firm is liable to the plaintiff for the same, whether the money was known by the other partner to be the money of the plaintiff or not.

Assumpsit, in Fulton Superior Court. Tried before Judge BULL, at the April Term, 1860.

This was an action brought by Charles F. Welker, against Alexander M. Wallace, as the surviving partner of Wallace & Robinson, to recover the sum of three hundred and sixty-five dollars, with interest, alleged to be due to the plaintiff, from said defendant, as survivor of the said firm.

On the trial, the plaintiff proved that William C. Robinson, deceased, was one of the late firm of Wallace & Robinson, of which the defendant was the survivor, and after proving that the same was in the handwriting of the said Robinson, the plaintiff introduced an envelope, directed to "Col. Charles F. Welker, Welker's Mills, Roane county, East Tennessee," and post-marked, "Atlanta, May 8th, 1858;" and also introduced in evidence the following copy-letter, to wit:

"ATLANTA, GEO., 7th May, 1858.

"*Dear Col.*—I had not time to write you sooner. I went to Carrollton the last of past week. Col. Boggus forked over. He had lost the note, and had to file his affidavit of the amount, and as Rhodahans were about making an assignment of their effects, he had not time to write for a copy of receipt, and had taken up the notion that it was payable in October, 1855, instead of April, and so lost you some interest. The net amount, after paying all expenses, is ($365) three hundred and sixty-five dollars. The day after I got home we had a note in bank maturing, and I used the money, as we were short, after paying heavy freight bills, and not having quick sales. We would like to use it thirty days at bank rate of interest, of one per cent. How shall I send it? In check on Augusta, Charleston or New York, or in large bills on Georgia banks? Our trade is good.

**PARTNERSHIP LIABILITY.** "**If a contract be made with one in his individual right,** and on his own security, **such person is alone liable** on that contract, **although a partnership existed,** that recovered the entire benefit of the contract of which such contracting party was a member." Floyd *v.* Wallace, 31 Ga. 688 (5), 693.

"**Where money of a ward was sent by the guardian to another to invest, and it was invested in a bond, and the person so investing formed a partnership, and the firm used the bond** as a collateral security, if the bond had been non-negotiable, the conversion and liability of

Have a large stock on hand. Some 80,000 cwt. bacon in nice new casks, packed at Murfreesboro' and Nashville, and very superior article. The demand is not very brisk, but our sales are so much better than the same time last year, that we feel very much encouraged. If it were not for the rather pressing debts contracted in building our warehouse, we would be perfectly easy, and feel like we were making money. But I had no idea how much thinking, and how much work a man could do, until I felt the weight of debt. It seems almost impossible to get money on mortgages, without giving 15c. We would willingly give 10c for $5,000, and secure by mortgage, and insurance against fire, and even then our rent would only amount to about $300, less, by a great deal, than any men in our line in town pay, and not getting half such a house as ourselves. We hope to be able to strike the right man soon. Kate wrote to Ma this week and will give the news. Bacon, hog round, 9¾; Sides, 11@11½; Hams, 9¾@11; Shoulders, 8¼@8½; Lard, 10½@12½; Flour, $2@2.30; Oats, 33; Wheat, 70@80; Corn, 60, sacked; Feathers, 33@35; Irish Potatoes, 40@45, sacked; Sweet Potatoes, $1.25@1.50.

"Yours truly,          WM. C. ROBINSON."

Plaintiff also introduced Jabez R. Rhodes as a witness, who testified: That he clerked for the firm of Wallace & Robinson; that Robinson was the plaintiff's son-in-law, and that his wife's name was Kate; that the firm sold such articles as are mentioned in the letter, and that the said firm built a warehouse just before the date of the letter; that the firm had nothing to do with collecting the plaintiff's money in Carroll county; that it was Robinson's individual account; (that he knew of Robinson's paying off the note, as stated in the letter); but this last item was ruled out by the Court, as the witness stated that he obtained his information from the books of the firm, which were not in evidence.

The plaintiff having rested his case, the defendant moved for a nonsuit, on the ground that it did not appear that the defendant, Wallace, knew of the borrowing of money, as mentioned in the letter.

The Court sustained the motion for a nonsuit, and refused to let the jury pass upon the case made by the evidence; whereupon, an order was passed dismissing the action as in cases of nonsuit.

---

the firm would be clearly shown in an action of trover; and as notice to one partner is notice to all and binds the firm, although the bond was negotiable, **the firm were not innocent purchasers without notice,** and the grant of a nonsuit was error." Cunningham v. Wood, 76 Ga. 302 (1), 303. And see Houser & Bronson v. Riley, 45 Ga. 126.

This decision constitutes the error complained of in this case.

A. W. HAMMOND & SON, for the plaintiff in error.

GLENN & COOPER, for the defendant in error.

*By the Court.*—LYON, J., delivering the opinion.

The judgment of nonsuit was improperly awarded. If it be true, as the evidence intimates, that the money of the plaintiff, in the hands of Robinson, the deceased partner, as the agent of the plaintiff, was applied by him in the business of the firm, the defendant is liable, whether he knew at the time or not, that the money belonged to the plaintiff. *Collier on Partnership*, §391. *Richardson vs French*, 4 *Metcalf*, 577.

This is not a case where money has been lent to one partner on the credit of such partner alone, and, therefore, not within the case of *Bond vs. Logan*, 13 *Geo.* 192, which is undoubtedly the law. There is no evidence, in fact, that the plaintiff consented to its use, by the deceased partner, for any purpose. The evidence is, that Robinson, the deceased partner, applied for leave to use it, and his admission that he did so use it. My own opinion was, that this letter, or admission of Robinson, was sufficient to bind the firm, and the investigation (I have been able to give the authorities since), has confirmed that opinion; (*See Pars. on Con.* 158, 159, *and notes and cases cited.* 3 *Kent Com.* 40, 41. *Collier on Part.* §§384, 390), but my associates thought it better that there should be some other evidence that the money went into the business of the firm, and so the case was decided.

## JUDGMENT.

Whereupon, it is considered and adjudged by the Court, that the judgment of the Court below be reversed, upon the ground that the Court erred in awarding a nonsuit in this case, on the ground, "that it did not appear that Wallace, the surviving partner, knew of such borrowing of the money," it being the opinion of this Court that if Robinson, the

·deceased partner, used the money in the business of the firm, that, in that case, defendant is liable for the same.